May I proceed? Good morning. If it pleases the Court, this case should be decided on the merits in a federal court in New York. When the CBA was created, it created an opportunity in New York, and based on the law in New York only, to revive to otherwise time-barred claims for victims of child abuse, like my clients. Now, there's no gamesmanship. That's a term that the lower court used. We have always sought to be in a New York court. We want New York law. We want to apply New York law. We have never tried to use venue transfer to obtain the benefit of another state's law, having realized that New York was the wrong venue. Can I ask, why did you start in Southern District, and after it was dismissed, why did you go to Eastern? I guess I don't understand. I know the other side says there's no venue even in Northern, but it's clear that as among the three districts, Northern would have the best claim to venue for you, and I'm puzzled as to why, especially after losing venue, you would then go to the next least likely district to have venue. No abuse happened in the Eastern District, you don't allege, but you do allege abuse happened in the Northern District. Why would you not choose the Northern District? Help me with that strategic decision. Absolutely. I think that the, I was in part of the Southern District litigation. It was, I think it was the wrong venue. That was a mistake. That's the answer. With respect to the Eastern District, Judge Coate, in her decision, listed four places, Eastern, Northern. I get the idea that maybe you would read her decision to suggest that maybe venue could be in the other places, but I don't understand why one would pick Eastern of all places, where you know that you're not alleging any misconduct happened, any sexual misconduct happened there. It's true that no sexual abuse occurred in the Eastern District. However, the key feature of these claims surrounds the parents' patriae, meaning the separation of the children from the parents, where then the school takes over the control, takes over effectively the role of the parents, at least at the time when they're in the school. That is the key nexus that holds all of these claims together. And that's why we've got So you thought Eastern was stronger than Northern for venue? I'm going to admit, today, I think the Northern is stronger, which is why we're pursuing it here. But at the time, that was the basis of the strategic decision, and it's exactly what I argued in the district court, unsuccessfully. Judge Coate didn't say that venue would be appropriate in any of these districts. She just said that there were other districts with substantially more connections than Southern. I think the word she used was strong, which is not the same as substantial, but I think has substantial overlap with the word strong. That's true. It is dicta. On the other hand, at least from reading the opinion, we thought it was pretty clear. And so that's what's also supporting, given the nexus argument, that's why we made the decision we did. That said, these are purely procedural issues. This has nothing to do with the merits. It has nothing to do with the law that would apply. I don't think anybody's argued that the Eastern District is a significant benefit with respect to traveler witnesses. I mean, we do everything virtually these days anyway, so we can alleviate any burden. So really, the only feature of the refusal to transfer to the Northern District is the complete dismissal of my client's claims. No, the other feature is that the other side has to litigate everything from scratch yet again, right? I mean, every time you try a district and you file a complaint, the other side has to respond fully, and you litigate all these things. They're going to ask for all the reasons to dismiss. Lack of venue, lack of personal jurisdiction, I don't know, statute of limitations, whatever it is. Every single time you try and you fail in a new district, they have to start over again. Why is that not an equity to say, look, you get two bites at the apple, but it is not an abuse of discretion on the part of the district court to say, no, you don't get to just automatically make your opponents start from scratch yet again. Why is that not a permissible equity? Two answers. One is I've never heard a court rule on that particular feature. Yeah, but why not? And the answer is because I don't expect their briefs to look substantially different than the ones that were filed in the Eastern District. And admittedly, I have not done a line-by-line comparison, but I believe the briefs in the Southern District effectively made the same arguments. And look, I wish that the district court had ruled on more than two issues, the venue one being the primary one and the other one were not challenging. I think that would have saved time. But if you're doing a balancing test between completely eliminating this, my client's ability to litigate this case on the merits versus revising a brief and refiling it in the Northern District, I think the equities are on our side, Your Honor. How do you respond to the district court statement that it's far from obvious that the venue would lie in the Northern District? Well, I think that that would be the flip side of Judge Coates' determination that there's a strong connection to the Eastern District. It's dicta. I think... That was before the oblates were dismissed on timeliness, right? When Judge Coates made that assessment? Is that correct? Yes, although I don't think the landscape would have been any different given the way the revival statute operated. She simply just didn't rule on that particular point and ruled on venue. So what conduct is alleged in the Northern District? There are approximately 10 instances of abuse in Essex County. That is a... But there were 10 instances of transportation to Essex. I mean, literally reading the complaint, I guess you could ask us to infer that abuse happened all 10 times, but that's not what the complaint says. So just let's... If you would direct us to portions of the record or the complaint and be specific. No, I agree. I see what Your Honor is picking up on. Yes, in paragraph 46, they were transported at least 10 times. I think that the reasonable inference from the paragraphs following is that abuse occurred in each one of those instances. The allegation is, is that the purpose for this transportation was to isolate my clients for abuse, and you can find that elsewhere. What paragraph does it say the purpose for the transportation was to isolate them? I don't know that the word purpose was used, but they do talk about how the... There is a comment about a conspiracy, and I'm... Just one second, I can find it. I think if you look, paragraphs 66 through 80, talk about the role of the Fall Diocese and the role of Father Carroll, and the fact that... Excuse me, Father Porter, and, you know, to the allegations between really, I guess, paragraphs 49 through 52, talking about them going there and being abused. There's also, unfortunately, the connection between Father Porter and Essex County. Clients don't have a specific memory of that based on information that I have, but they do... Are you relying on a connection? Not specifically. Okay. What I'm saying is, is that the overall allegation is, is that these people were transported knowing that they... Transported to various different locations, including Essex County, knowing that they were going to be abused. I mean, meaning that the school where they were being taught and being housed knew or should have known of the abuse. The transportation to and from that location was by Sacred Hearts, also the Grey Nuns. Yes, there's a dispute over which Grey Nuns are the Grey Nuns, and we believe that discovery is necessary, and that should be determined by district court in the first instance. I think the only tenuous connection would be to Fall River, because the priests at Fall River, there is an allegation that they abused the children in Newburgh, which is in the Southern District, and I think there's an inference that it probably happens also in the Northern District, but we are talking about something that happened to children 50 years ago, and some memories are vivid, and some details could be more crystalline. I think I'm over by two minutes, so if the court has any other questions, I'll do my best to respond. You've reserved two minutes for vote. I sure did. Thank you. Thank you, Chief Judge Livingston. May it please the court. My name is Evan O'Brien. I represent the Sisters of Charity of Montreal. I'm joined here by Andrew Lankler, who represents the Quebec Sisters, Dominique Camacho-Moran, who represents the Diocese of Fall River, and Sanford Talkin, who represents the Congregation. I'm going to be addressing issues that are common to all the appellees. We're here today because, despite having the benefit of counsel, appellants filed suit in the wrong venue, not once but twice, and neither Judge Coates nor Judge Kovner's venue analysis is even at issue on appeal. Appellants concede, at this point, that venue was improper in both the Southern District and Eastern District. I don't think they conceded it. I thought they actually took the contrary position in the reply brief, that they think it was wrong, but they've just chosen not to appeal it. I think that they are not appealing it. So that's different from conceding that it was correct? I understand, Your Honor. So you don't overstate the matter? I take the point, Your Honor. They are not challenging that venue was improper in the Southern District or the Eastern District. And the only issue here is whether the interests of justice would have warranted a transfer to the Northern District. And in the appellee's view, Judge Kovner's decision was well within the bounds of her permissible range of discretion. Giving the appellants a third bite at the apple would have been an unprecedented exercise of discretion. I don't see a precedent in this Court for a transfer or a reversal of a denial of transfer under remotely similar circumstances. And that's especially the case given the record that was before Judge Kovner. It was highly questionable, as she stated in her opinion, whether venue would have lain in the Northern District. And as she also said, transfer would have rewarded the plaintiffs for lack of diligence in selecting an appropriate venue, not just once, but twice. And I think this Court's precedents, and basically I think there are three of them, all of those, that's the Spahr decision, the Blakely decision, and then the Minnette decision, I think all of those decisions favor the affirmance of Judge Kovner's decision. As this Court held in the Spahr case back in 1992, Section 1406 of the venue transfer statute should not operate automatically to give a plaintiff an additional opportunity to select the district of litigation. Counsel, can I ask something? Judge Sardini asked, opposing counsel, you're out of SDNY on venue. You want to be in New York, obviously, for the statute of limitations. You're choosing between Eastern District and Northern District. Why wouldn't you choose Northern District as sort of obviously more connection, because there are allegations of abuse in the Northern District? And so it seems strategic or gamesmanship of some type to have chosen Eastern District. Do you agree with that? Do I agree that it seems like... To have chosen Eastern District rather than the Northern District? That it seems like gamesmanship? I think it was further lack of diligence and an over-reading of Judge Coates' order in her January 2023 order. I don't think that that order was a pre-approval of refiling in the Eastern District. It might have been some suggestion, and let's assume they're deciding between Eastern District and Northern District, so it's a data point they take into account in the Eastern District. But do you agree with the proposition that between the two, Northern District would have been the more logical choice in light of specific allegations of abuse in Essex County? Yes, Your Honor. So how then is that consistent with Judge Kovner's conclusion that there likely wouldn't be venue in the Northern District, and how much does that weigh into her analysis? Yes, I think it is consistent. Essentially, there's essentially a spectrum here. I think that that probably gets plotted out when you consider the potential districts. And the Northern District – We can start with Massachusetts, surely. Yes. And Judge Coates and Judge Kovner both – We understand why they didn't file it. Yes. Yes. They were both very clear that venue would have been proper in Massachusetts. The Northern District is, putting it colloquially, they're getting warmer with the Northern District as compared to the Eastern District. But even Judge Coates, in her – and this is very early on in the proceeding – her comments were not exactly a ringing endorsement of the Northern District either. I think she said somewhat less specificity was, I think, the description of the allegations in the Northern District. And those allegations are alleged abuse by – and now I'm fast-forwarding, Judge Nathan, to where we are today, which is very different. Those allegations are allegedly by an oblate priest, a party that was involved in this litigation but was dismissed and is not here on appeal and is not going to be participating in any transferee litigation in the Northern District if that were to occur. So that close nexus that needs to – needs to exist in order for transfer to be appropriate is now – is now totally absent. What about the – I mean, counsel – we were pressing counsel on the specific allegations in Essex, and he pointed to the allegations with respect to Sacred Heart nuns and gray women. Is it – is it right what Judge Govner said that – that all of the Northern District – just read it – all – virtually all the conduct alleged to have occurred in the Northern District relates only to the oblates defended being dismissed on timeliness grounds? Is that accurate? I think it is accurate, Your Honor. I think it's a fair – it's a fair reading of the – of the complaints. The other – the appellees that are now here before you, I think to the extent there's any connection to the Northern District, it has to do, as I think the colloquy from – from counsel with Judge Nardini indicated, had to do with transportation only. And – and that's simply, in our view, not a close nexus to any alleged abuse that may have occurred in the Northern District, but more fundamentally to the – the gravamen of the complaint as a whole, which both Judge Cote and Judge Govner recognized centers on alleged abuse overwhelmingly taking place in Massachusetts. And – and even if maybe that's not the only way to look at the complaint, I think it was not an abuse of discretion for Judge Govner to read the complaint in that manner. And I think ultimately that's the standard of review that – that we're working under. Can I ask you – this is a – it's a basic question that I don't – I don't totally know the answer to, to the extent that there are allegations that relate to the oblates who are being dismissed. Do you assess venue as sort of as a – for transfer purposes here based on the complaint as filed and alleged, or do you reassess temporarily later once some defendants have been dismissed? I – I think it's – it can be the latter because it is a – it is – it is a discretionary call by the district court. So I suppose the complaint as a whole would represent the outermost bounds of what Judge Govner could have considered. But I think she had discretion to take a very realistic look at what this hypothetical third litigation would look like and the absence of the oblates in that hypothetical litigation. And I think she made a reasonable call to say that a third litigation is just not appropriate. It would have entailed a fourth round of dispositive briefing by all of us. And I don't – I don't agree that that would just be a matter of revising a brief that was previously filed. The analysis would be substantially different, I would say, in the Northern District, whereas the Southern District and Eastern District issues were quite similar. The Northern District presents difficult issues and those would need to be briefed very thoroughly and would entail quite a lot of burden and expense. Unless there are any questions, my colleague, Mr. Lankler, would like to address a couple of issues specific to his client, if that's okay. Thank you very much. Please affirm. May it please the Court, I am Andrew Lankler. I represent the Sisters of Charity, Quebec. I'm going to be very brief. I'm addressing a very limited point, which is that the – that though Judge Govner did not reach the conclusion, having dismissed out the Sisters of Charity for lack of venue, the Sisters of – the matter as against the Sisters of Charity is indeed time barred. And so I'm going to very specifically rebut the reply put in by the appellants to the effect that CPLR 1024 would apply in this particular matter. Very succinctly stated, Judge Govner squarely addressed and rejected the applicability of Section 1024 to this case because this case is simply not a 1024 case involving an unknown party. Specifically, it's at A56 of the appendix that the Court wrote, Section 1024 requires the plaintiff to have inter alia described the John Doe party in such form as will fairly apprise the party that he is the intended defendant in the original pleading. Plaintiff's original complaint does not meet this standard, although it becomes – although it names black and white corporate defendants 1 through 10 as defendants in the caption, it does not describe any conduct at all attributable to any unknown entity. Beside the fact that the caption, there is simply no indication the plaintiff sought in their original complaint to bring claims against any unknown defendants rendering Section 1024 inapplicable. So this is not a John Doe case. The appellants will never be able to sustain a Section 203 relation back because there is no juror relationship between the Sisters of Charity Quebec to any other defendant in this case, including Montreal. I'll end on the note that we're in this because after the filing of the complaint, there was an effort to suggest that the Sisters of Montreal were not the right party and that instead it should be the Sisters of Quebec. And so there will be finger pointing. We are not – there is no juror relationship. This is not a 1024 case. There shouldn't be – there will not be a relation back under 203. And so for that reason, should this court consider it – consider reviving this case, we would ask that you consider the dismissal of the Sisters of Charity of Quebec for statute of limitations purposes. Can I ask just one terminological question? Maybe it's for the other side. But the phrase black and white corporations, I've never heard that before. Is that supposed to be a generic reference? I haven't and I struggle with it because we're the gray knights. I guess if you put black and white together, you get gray. But, you know, it's clearly a reference to a John Doe. And as a – A John Doe order of religious sisters perhaps? All right. Maybe the other side can – Would have been – by the way, it would have been better. But that's not what it is. It's just – and there's no reference to any particular conduct performed by any of the John Doe defendants, which is requisite under 1024. I just – it was a terminological question. Absolutely. Any – if there's any other questions, otherwise, thank you for your time. Thank you. And we'll hear rebuttal. Just to jump into Your Honor's question, I don't actually know. I started in on this case as local counsel for a Texas firm. I think that is a unique Texas quirk and that's the best answer that I have. Fine. Thank you. It does refer to a John Doe corporation. Thank you. With respect to Your Honor's question about whether or not there's gamesmanship with respect to transfer to the Northern District or a choice in the Eastern District setting aside Massachusetts, we don't see the Northern District or Eastern District being meaningful – meaningfully different except for the fact that we believed that we had a slightly better jurisdiction or venue hook in the Eastern District than the Northern District when we filed in the Eastern District. And I don't think there's been any allegation that there's really any meaningful difference for this particular case between those two venues. With respect to the statement that it's unprecedented, I disagree with that. Obviously, this is a very unique set of facts. There are not a lot of transfer of venue decisions, particularly at the appellate level, but the one principle that does seem to be out there is that it shouldn't function as a dismissal completely on the merits. That's where we get the abuse of discretion. And I think overall I understand the technical issues and I understand why a third bite at the apple has a rhetorical appeal to it. But at the end of the day, the punishment does not fit the crime. This should be determined on the merits. It should not be determined – The Sparr case says that even if non-transfer means you're out of time under a statute of limitations, that that's not a basis to reach a contrary conclusion. How do you distinguish that? Well, in Sparr, they filed time-barred claims, I believe in New York, in one venue, realized their claims probably wouldn't be transferred in a different state, different forum, different law, and then tried to use transfer of venue to get that hook around what's functionally their original mistake. And I think that's the kind of gamesmanship that has been criticized by this Court. Here, we've always just wanted New York law. This is all about finding a New York home for this case. We've never said otherwise. And that's because of the unique features of the CBA, where the New York legislature essentially invited these claims in New York to protect former children, New York residents at the time. If you have any other questions, I'm happy to answer them. Oh, and the conspiracy I was referring to, paragraph 32 is where it pulls together. My apologies for not finding that sooner. No, thank you. Thank you very much. Please reverse. Thank you all, and we will take the matter under advisement.